IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           CR 18-3413 KG

JADE TIFFANY LAUREZO,

    Defendant.

## ORDER ADOPTING CHIEF MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Chief Magistrate Judge Carmen E. Garza's *Proposed Findings and Recommended Disposition* (the "PFRD"), (Doc. 68), filed May 2, 2019; Defendant Jade Tiffany Laurezo's *Objections to the Proposed Findings and Recommended Disposition Regarding Motion to Suppress Evidence* (the "Objections"), (Doc. 71), filed May 16, 2019; and *The United States' Response to Defendant's Objections to the Proposed Findings and Recommended Disposition Regarding Motion to Suppress Evidence* (the "Response"), (Doc. 79), filed May 31, 2019. In the PFRD, the Chief Magistrate Judge recommended that Ms. Laurezo's *Motion to Suppress Evidence*, (Doc. 26), be denied.

The parties were informed that objections to the PFRD were due within fourteen days of the date the PFRD was filed. *Id.* at 19. Ms. Laurezo timely objected to the PFRD, (Doc. 71), and the Government timely responded to those objections, (Doc. 79). The Government did not object to the PFRD, and the time for doing so has passed. *See* Fed. R. Cr. P. 59(b)(2). Following a *de novo* review of the *Motion to Suppress Evidence*,

PFRD, Objections, and Response, the Court will overrule the Objections, adopt the PFRD, and deny the *Motion to Suppress Evidence*.

I. **Background**

The facts of this case are detailed in the PFRD, which the Court incorporates by reference. The Court will briefly repeat the relevant facts here.

On June 26, 2018, Detective Valderaz applied for and was granted a search warrant for 3809 Zinnia Road, Roswell, New Mexico. (Doc. 26 at 12); (Doc. 33-1). The affidavit in support of the search warrant set forth the following information: on March 27, 2018, the National Center for Missing and Exploited Children received a CyberTipline Report of three uploaded files of child pornography, linked to email address dayton66xx@gmail.com; on May 16, 2018, and May 29, 2018, Special Agent Owen Pena with the Office of the Attorney General of the New Mexico Investigation Division downloaded the sexually explicit materials from IP address 199.83.119.146; on June 18, 2018, Special Agent Pena received the requested subscriber information, listing an individual named Dain Adams as the registered owner of the IP address and linking the account's service address to 3809 Zinnia Road, Roswell, New Mexico; on June 22, 2018, Detective Raul L. Valderaz with the Criminal Investigation Division of the Chaves County Sheriff's Office travelled to 3809 Zinnia Road, observed a 2007 Toyota Pickup truck, and verified that Dain Adams was the registered owner of the truck. (Doc. 33-1 at 8-12).

The search warrant for 3809 Zinnia Road authorized law enforcement officers to search the residence for:

> All electronic data processing and storage devices, computers and computer systems including central

> processing units; internal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, memory cards, USB thumb drives, optical storage devices or other memory storage devices; peripheral input/output devices such as keyboards, cameras, printers, video display monitors, optical readers and related communication devices such as modems; together with system documentation operating logs and documentation, software and instruction manuals, handwritten notes, logs, user names and lists. All images, video cassette tapes and/or motion pictures, which may contain any, unclothed and/or partially unclothed male and/or female children under the age of eighteen. All images, videocassette tapes and/or motion pictures portraying children under the age of eighteen engaged in sexual conduct or involved in lewd exhibition of the genitals. All images, photographs, film or negatives, which may contain unclothed and/or partially unclothed male and/or female children under the age of eighteen. All images, photographs, film or negatives which may contain children under the age of eighteen engaged in sexual conduct or involved in lewd exhibition of the genitals. All books, magazines, documents, advertisements portraying children under the age of eighteen engaged in sexual conduct, posed in sexually explicit positions or that contains unclothed or partially unclothed children under the age of eighteen. All documents tending to show occupancy and/or ownership for the home, including personal identification, bills, receipts, canceled mail, utility bills, rent receipts and bank statements. Photographs of the interior/exterior of the residence.

(Doc. 33-1 at 7).

On June 27, 2018, Detective Valderaz executed the search warrant. *Id.* Inside the 3809 Zinnia Road residence, Detective Valderaz encountered Defendant Jade Tiffany Laurezo, later identified as Dain Adams' girlfriend, and Donnie and Marsha Roberson, Dain Adams' parents. (Doc. 55 at 6 ¶ 36). Detective Valderaz confirmed that Dain Adams lived at the address but was not present at that time. (Doc. 57 at 4). In the northwest bedroom, Detective Valderaz found multiple electronic devices, including a Samsung DUOS cellphone. *Id.*; (Doc. 26 at 12).

3

After the search of the residence, Detective Valderaz obtained warrants to search each of the electronic items seized, including the Samsung DUOS cellphone. (Doc. 26 at 12). For the Samsung DUOS cellphone search warrant, Detective Valderaz submitted the same affidavit in support of the search warrant for the 3809 Zinnia Road residence, adding that he had executed the search warrant, confirmed that Dain Adams lived at the residence, and had seized multiple electronic devices from the home. (Doc. 55 at 6 ¶ 31). The warrant for the Samsung DUOS cellphone allowed law enforcement to search for the following information:

> Forensic evaluation to obtain and identify all digital data from the phone that details communications; to include, but not limited to, call history, instant messages, emails, text messages and multi-media messages. Any call information regarding incoming and outgoing calls, any contact or phonebook information, and incoming and outgoing texts [sic] messages, any incoming or outgoing emails, any incoming or outgoing picture messages, any data contained on any media card inserted in the phone, any SIM cards inserted in the phone. Any images, videos, or sound recordings documenting the crime, or circumstances leading to the crime. Any information regarding the service provider for the cellular phone. Cell phone, SD cards, and SIMS will be forensically processed on site by Affiant or designee.

(Doc. 33-2 at 7). On July 3, 2018, Detective Valderaz searched the Samsung DUOS cellphone and discovered two videos featuring an adult female engaging in sexually explicit conduct with one male child between the ages of four and six years old. (Doc. 1 at 6-7). The adult female was later identified as Defendant Jade Tiffany Laurezo and the male child was identified as her son. (Doc. 55 at 7 ¶ 46). Ms. Laurezo now moves to suppress the evidence seized from the 3809 Zinnia Road residence and from the search of her Samsung DUOS cellphone. (Doc. 26).

4

In the PFRD, the Chief Magistrate Judge found: (1) sufficient probable cause supported both of the search warrants, (Doc. 68 at 8-12); (2) the search warrants were not overly broad, *id.* at 12-17; and (3) law enforcement did not materially omit evidence from the search warrant for the Samsung DUOS cellphone in violation of *Franks v. Delaware*, *id.* at 17-19. Therefore, the Chief Magistrate Judge found no Fourth Amendment violations and recommended Ms. Laurezo's *Motion to Suppress Evidence* be denied. *Id.* at 19. In her Objections, Ms. Laurezo argues the Chief Magistrate Judge omitted several relevant factual findings and erred in finding the search warrants were supported by probable cause and were not overly broad. (Doc. 71 at 1-20).

**II.     Analysis**

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. Fed. R. Civ. P. 59(b)(3). "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." *Id.* Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996). Additionally, issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

### A. Objections to Findings of Fact

Ms. Laurezo first objects to the Chief Magistrate Judge's findings of fact. She contends the Chief Magistrate Judge omitted several findings of fact that are relevant to the findings in the PFRD. (Doc. 71 at 1-5). The Government states in its Response that the facts raised by Ms. Laurezo are not essential to the findings and recommendations by the Chief Magistrate Judge. (Doc. 79 at 1-2). Moreover, the Government argues the PFRD includes sufficient facts to support the legal conclusions, and Ms. Laurezo does not point to any findings that are erroneous or not supported by the record. *Id.* at 2.

Ms. Laurezo first argues the Chief Magistrate Judge should have noted that the search warrant for 3809 Zinnia Road authorized the seizure of "All images, videocassette tapes and/or motion pictures, which may contain any, unclothed and/or partially clothed male and/or female children under the age of eighteen." (Doc. 71 at 1-2). However, while not quoted verbatim from the search warrant, the Chief Magistrate Judge explained in her findings of fact that the warrant allowed seizure of "all images, videos, photographs, books, magazines, and documents which may contain any unclothed or partially unclothed children under the age of eighteen." (Doc. 68 at 3). Therefore, Ms. Laurezo's contention that the Chief Magistrate Judge did not consider this portion of the search warrant in making a recommendation on the *Motion to Suppress Evidence* is without merit and this objection is overruled.

Similarly, Ms. Laurezo argues the Chief Magistrate Judge omitted that the search warrant for the Samsung DUOS cellphone allowed a search for "any videos, any instant messaging, and any e-mail accounts within that phone." *Id.* at 3. Contrary to Ms. Laurezo's assertion, when considering whether the cellphone search warrant was overly

6

broad, the Chief Magistrate Judge noted the warrant authorized law enforcement to forensically extract:

> All digital data from the phone that details communications, to include but not limited to, call history, instant messages, emails, text messages and multi-media messages; any call information regarding incoming and outgoing calls, text messages, and picture messages; any contact or phonebook information; any data contained on any media card or SIM cards inserted in the phone; any images, videos, or sound recordings documenting the crime, or circumstances leading to the crime; and any information regarding the service provider for the cellular phone.

(Doc. 68 at 14) (citing Doc. 26-1 at 7). Therefore, the Chief Magistrate Judge did consider these facts when making her recommendations and the Court overrules this objection.

In addition, Ms. Laurezo argues the Chief Magistrate Judge omitted several facts relating to Ms. Laurezo's argument that the search warrants were only based on information relating to Dain Adams. For example, Ms. Laurezo states the Chief Magistrate Judge erred by omitting the fact that "Detective Valderaz did not check with the County Clerk's office to see who owned the property because he believed Dain Adams' name listed on the vehicle parked at the residence was sufficient to apply for the search warrant." (Doc. 71 at 2). Ms. Laurezo also contends the PFRD should have noted that Detective Valderaz was aware that Dain Adams was out of town when the devices were seized, demonstrating that Detective Valderaz knew that the devices he seized did not belong to Dain Adams. *Id.* at 4. Further, she argues the PFRD should have included that Detective Valderaz did not know who Ms. Laurezo was, what her relationship to Dain Adams was, or how long she had been in the home. *Id.* at 4-5. Ms.

Laurezo contends these facts show that Detective Valderaz did not have any information linking Ms. Laurezo's cellphone to possible child pornography.

As explained in the PFRD, while the Fourth Amendment is known to "protect people, not places," a warrant may be issued to search a particular place when there is a nexus between the items sought and the place to be searched. *Katz v. United States*, 389 U.S. 347, 351 (1967); *United States v. Gillman*, 432 Fed. Appx. 513, 515 (6th Cir. 2011) (unpublished). Importantly, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 554, 556 (1978) ("Search warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need not even name the person from whom the things will be seized.").

Here, the search warrant was for the seizure of electronic devices found at 3809 Zinnia Road and was supported by the following facts: Detective Valderaz received a CyberTipline Report from the National Center for Missing and Exploited Children connecting Dain Adams' email address, dayton66xx@gmail.com, to uploaded files of child pornography; the child pornography files were traced back to a particular IP address listing Dain Adams as the subscriber; the IP address used for uploading the child pornography files listed 3809 Zinnia Road as the "service address;" and law enforcement observed Dain Adams' car parked in front of the 3809 Zinnia Road residence. *See* (Doc. 26-1).

The Court agrees with the Chief Magistrate Judge that this information is sufficient to lead a reasonable person to believe that evidence of child pornography could be found on the electronic devices inside the 3809 Zinnia Road residence. Ms. Laurezo does not explain how the fact that Detective Valderaz did not check with the County Clerk's office to see who owned the property affects this finding. The ownership of the residence is not in dispute and the search warrant was based on more than Dain Adams' vehicle being parked in front of the property, such as Dain Adams' email and IP address being linked to child pornography, and the IP address listing 3809 Zinnia Road as the service address. Ms. Laurezo also does not explain how information relating to the ownership of the seized electronic devices changes this finding. Since the affidavit provided that evidence of child pornography could be found on any electronic devices found at the residence, Detective Valderaz had information linking the cellphone to possible child pornography regardless of Ms. Laurezo's relationship of Dain Adams. Therefore, the Court will overrule these objections. *See United States v. Chiaradio*, 684 F.3d 265, 279 (5th Cir. 2012) (holding that probable cause existed where the affidavit explained how the investigation led to the defendant's IP address and, in turn, his home).

Ms. Laurezo also objects to the Chief Magistrate Judge not including the fact that Detective Valderaz testified that he "could have easily determined which device belonged to which person at the residence, but he purposely did not try to do so and would have seized them anyway." (Doc. 71 at 2). Similarly, Ms. Laurezo objects to the omission of Detective Valderaz' testimony that he forgot to seize the residence's internet modem, and that the modem has a record of which devices connected to it at

any time. *Id.* at 3. She contends these findings affect the issue of whether Detective Valderaz had probable cause to search every electronic device in the residence when the modem could have provided information regarding whether they had connected to the modem. *Id.* at 2-3.

Again, the search warrant for the residence authorized the seizure of all devices found at the residence, and was not limited to devices that had connected to the modem. *See* (Doc. 33-1 at 17). Therefore, even if the modem could have shown which devices connected to it, there would still be a need to search each device for evidence of child pornography. For these reasons, the Court finds no error in the Chief Magistrate Judge's consideration of these facts and overrules these objections. *See Zurcher*, 436 U.S. at 556 ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought.").

Based on the foregoing, the Court finds that the facts Ms. Laurezo contends were omitted from the PFRD were either included in the PFRD or do not affect the Chief Magistrate Judge's findings. Therefore, even considering all the facts Ms. Laurezo claims were omitted, the Court finds no error in the findings of fact set forth in the PFRD and overrules these objections.

> B. <u>Objections to Probable Cause Determination</u>
> > i. Search Warrant for Residence

Next, Ms. Laurezo objects to the Chief Magistrate Judge's finding that there was sufficient probable cause to support the search warrant for the residence. (Doc. 71 at 6-

10). Ms. Laurezo argues there was only probable cause regarding Dain Adams, and Detective Valderaz did not have information indicating any other person may have downloaded the suspect videos. *Id.* at 8. Because any electronic device could have connected to the IP address at the residence, and because the affidavit only referred to downloads to an email account associated with Dain Adams, Ms. Laurezo contends there was insufficient evidence to search for devices belonging to anyone other than Dain Adams. *Id.* at 8-10. In Response, the Government argues the Chief Magistrate Judge correctly found there was probable cause supporting the search warrant for the residence. (Doc. 79 at 2-3).

The affidavit for the search warrant for 3809 Zinnia Road states that Dain Adams' email and IP address were used to upload files of child pornography, 3809 Zinnia Road was the "service address" for Dain Adams' IP address, and Dain Adams' car was observed parked in front of the 3809 Zinnia Road residence. (Doc. 33-1 at 12). While Ms. Laurezo argues these facts support a finding of probable cause only as to Dain Adams and his electronic devices, the Court does not agree that the facts dictate such a limited finding. Instead, even though the email address and IP address used to upload the images were linked to Dain Adams, the specific device that was used had not yet been identified. As such, the affidavit provided reasons to believe that a device at the 3809 Zinnia Road residence was uploading child pornography files, and the search warrant therefore allowed a search of the residence for all electronic devices.

Ms. Laurezo argues in her objections that any device near or in the house could have connected to the IP address, so there was insufficient probable cause to search for devices other than those belonging to Dain Adams. (Doc. 71 at 9-10). However, it is

11

precisely because any device can connect to the IP address that it was reasonable to believe that someone other than Dain Adams may have been uploading child pornography files. *See, e.g., State v. Reichling*, 781 F.3d 883, 887-88 (7th Cir. 2015) ("it was or should have been common knowledge to judges (like other members of the public) that images sent via cellphones or Facebook accounts may be readily transferred to other storage devices"); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("[I]t is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific call.").

The Chief Magistrate Judge relied on several cases for her finding that there was probable cause to seize all electronic devices at the residence. *See* (Doc. 68 at 9-11) (citing *United States v. Renigar*, 613 F.3d 990, 994 (10th Cir. 2010) (finding an affidavit that explained child pornography was being shared from a specific IP address provided sufficient probable cause to search the residence associated with the IP address); *Chiaradio*, 684 F.3d at 279 (finding probable cause where the affidavit explained how the investigation led to the defendant's IP address and, in turn, his home); *United States v. Vosburgh*, 602 F.3d 512, 526 (3rd Cir. 2010) (finding it was "fairly probable" that child pornography may be located on computer equipment found in the defendant's home where the affidavit provided that someone using a computer with an IP address used to download child pornography was assigned to an internet account registered to the defendant's home); *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (finding "an association between an IP address and a physical address" is a substantial basis to

conclude that evidence of criminal activity may be afoot inside an individual's residence)).

Ms. Laurezo argues these cases are not persuasive because they did not involve the seizure of electronic devices belonging to people who were not listed as owners of the IP address or residence. (Doc. 71 at 9-11). Nevertheless, Ms. Laurezo does not cite to any authority that requires a search warrant based on an IP address being used to upload child pornography to be limited to electronic devices belonging only to the subscriber of that IP address. Instead, Ms. Laurezo relies on *In re Application for a Search Warrant*, 236 F.Supp.3d 1066 (N.D. Ill. 2017), in which the court denied the government's request for a search warrant allowing it to force any person on the premises to unlock biometrically any Apple device that might be found there. (Doc. 71 at 9, n.1). In that case, the court allowed the government to search a residence for electronic storage media and computer equipment based on evidence that someone at the residence was trafficking child pornography. However, the court did not allow the government to compel any individual present at the residence at the time of the search to provide his or her fingerprints to gain access to the contents of any Apple devices found there. 236 F.Supp.3d at 1067. The court reasoned that this constituted "forced fingerprinting" and implicated a person's Fifth Amendment privilege prohibiting compelled self-incrimination. *Id.* at 1070-71.

Here, the Government did not seek to compel any person at the residence to unlock an electronic device, and did not even seek to search any of the electronic devices at the residence. Instead, Detective Valderaz prepared individual search warrants for each device found at the residence. Indeed, the court in *In re Application*

*for a Search Warrant*, allowed law enforcement to remove all electronic media from the premises and to conduct forensic searches. The case Ms. Laurezo relies on, therefore, supports the Chief Magistrate Judge's finding that the two search warrants provided sufficient probable cause to search the devices found at the residence.

Ms. Laurezo also relies on *Ybarra v. Illinois*, 444 U.S. 85 (1979), in which the United States Supreme Court held that a search warrant to search a tavern did not provide probable cause to search a patron at the tavern. (Doc. 71 at 10). The Supreme Court in *Ybarra* reasoned that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 91. The Court agrees with the Government that *Ybarra* is distinguishable. *See* (Doc. 79 at 2). In *Ybarra*, the officers searched a person, but in this case the officers did not search Ms. Laurezo. Instead, the devices that were seized were linked to the alleged crime due to their capability to connect to the IP address used to upload child pornography. For these reasons, the Court finds that the affidavit established probable cause that evidence of child pornography would be found at the residence and on any electronic devices capable of accessing the internet found inside.

*ii. Search Warrant for Cellphone*

Next, Ms. Laurezo argues that even if there was sufficient probable cause to search the 3809 Zinnia Road residence, the search warrant for the Samsung DUOS cellphone was not supported by probable cause. (Doc. 71 at 7, 11-13). Ms. Laurezo contends Detective Valderaz "lied by omission" by failing to state in the affidavit for the search warrant that Dain Adams was not present during the search of the residence and that others lived at the residence. *Id.* at 7. Therefore, Ms. Laurezo states "Detective

14

Valderaz led the judge to believe that all devices seized were connected to Dain Adams." *Id.* Further, Ms. Laurezo argues the cellphone search warrant was not supported by probable cause and was overly broad because Detective Valderaz did not confirm which devices belonged to Dain Adams and the cellphone was not "otherwise linked to the alleged offense of possessing child pornography." *Id.* at 12-13.

The Court has already explained that the evidence in the affidavit linked uploaded child pornography files with the 3809 Zinnia Road residence, not with Dain Adams as the internet subscriber. Therefore, Dain Adams' presence at the residence and his ownership of the devices is not relevant. *See* (Doc. 79 at 3) ("[N]othing in the search warrant required Detective Valderaz to discern the owner of the cellphone prior to seizing it." (citing Doc. 33-2 at 7). Moreover, Ms. Laurezo's argument that her cellphone was not linked to the alleged offense is incorrect. Instead, its presence at the 3809 Zinnia Road residence and its capability of connecting to the IP address linked it to the alleged crime. Therefore, the Court finds there was probable cause to search the cellphone and overrules this objection. *See Reichling*, 781 F.3d at 885-86 (upholding warrant authorizing search of electronic devices at a residence for all images or recordings "representing the possible exploitation, sexual assault and/or enticement of children").

### C. *Objections to Overbreadth and Particularity Determination*

#### i. Search Warrant for Residence

Additionally, Ms. Laurezo objects to the Chief Magistrate Judge's finding that the search warrants were not overly broad. First, Ms. Laurezo argues the warrant to search the residence was overly broad because it authorized seizure of items that are not

evidence of a crime, such as software and instruction manuals, and images of unclothed or partially-clothed children that are not necessarily child pornography. (Doc. 71 at 14-15).

The Chief Magistrate Judge found that, because Ms. Laurezo did not raise this argument in her *Motion to Suppress Evidence*, (Doc. 26), or at the suppression hearing, the argument is waived because the Government was unable to address this contention. (Doc. 68 at 14). (citing *United States v. Burke*, 633 F.3d 984, 987-88 (10th Cir. 2011) (finding that an argument that was not raised in a motion to suppress was waived); *United States v. Banks*, 451 F.3d 721, 727 (10th Cir. 2006) (same)). In its Response, the Government agrees that it was not given notice of this argument, so it was unable to elicit any relevant testimony at the hearing. (Doc. 79 at 6). The Government further contends these items are linked to child pornography because they show a general sexual interest in children and could be relevant circumstantial evidence. *Id.* at 7.

The Court agrees that Ms. Laurezo waived the argument that the search warrant was overly broad because it authorized seizure of software and instruction manuals and images of children that are not necessarily pornography. Ms. Laurezo's failure to raise this in her *Motion to Suppress Evidence* or at the evidentiary hearing deprived the Government of an opportunity to obtain testimony about these items. In addition, even if this argument is not waived, the Tenth Circuit has approved seizure of items showing an interest in child pornography. *See United States v. Grommet*, 496 F.3d 1263, 1270 (10th Cir. 2006) (approving seizure of videotapes and other non-computer related property because the seizure was nonetheless directed at items related to child

pornography); *United States v. Hall*, 142 F.3d 988, 995-96 (10th Cir. 1998) (upholding search warrant for seizure of items showing an interest in child pornography or child erotica). Therefore, the Court overrules this objection.

Ms. Laurezo also contends the warrant to search the residence was overly broad because it was not limited to seizure of items that belonged to Dain Adams. *Id.* at 15. Ms. Laurezo relies on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), for this argument. In *Griffith*, the court considered a search warrant for all electronic devices at a residence in connection with a homicide a year earlier. *Id.* at 1269. The Court held that the warrant was overly broad because it was not limited to devices owned by the defendant.

The holding in *Griffith* is distinguishable because the search warrant was based only on the officer's assertion that gang members communicated using electronic devices, and did not involve a crime concerning an IP address. Here, however, the search warrant is supported by evidence that the IP address associated with the residence was being used to upload child pornography, and a search of all devices at the residence could be involved in the alleged crime. Therefore, Ms. Laurezo's reliance on this case is unpersuasive and the Court will overrule this objection.

>  ii.  *Search Warrant for Cellphone*

Finally, Ms. Laurezo contends the search warrant for the cellphone is unconstitutionally overbroad because it allowed officers "to search for everything on the phone including the location data." (Doc. 71 at 16-17). She further argues the cellphone search warrant was overly broad because it does not connect the phone to the offense being investigated. *Id.* at 18-19. Ms. Laurezo states that because other people were

17

present at the residence and Dain Adams was not present at the time of the search, the warrant allowing a search of the phone should have been more constrained. *Id.* at 19.

In the PFRD, the Chief Magistrate Judge explained that the cellphone search warrant did not permit law enforcement to search for everything on the phone. *See* (Doc. 68 at 15-17). Rather, the warrant authorizes law enforcement to search "all digital data *that details communications*." (Doc. 26-1 at 7) (emphasis added). The Tenth Circuit has explained that a catch-all phrase "does not taint a warrant when the language serves only to modify one or more categories in [a] list." *United States v. Dunn*, 719 Fed. Appx. 746, 749 (10th Cir. 2017) (unpublished); *see also United States v. Burgess*, 576 F.3d 1078, 1091-92 (10th Cir. 2009) (warrant was sufficiently particular when the "not limited to" language applied only to a category of drug paraphernalia); *United States v. Otero*, 563 F.3d 1127, 1132-33 (10th Cir. 2009) (same with respect to categories of documents and computer files). Moreover, the language in the warrant that authorized review of "all digital data that details communication" encompasses the many multi-media applications an individual may use to communicate on a cellphone, and law enforcement is not required to list every application that may be on an individual's cellphone that has the capacity to communicate with others. *See Burgess*, 576 F.3d at 1093 (recognizing that it is "unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods—that process must remain dynamic."); *United States v. Janus Industries*, 48 F.3d 1548, 1554 (10th Cir. 1995) ("When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility,

the searching agent can only be expected to describe the generic class of items he is seeking.") (internal quotations and citation omitted).

As for Ms. Laurezo's objection that the warrant does not connect the phone to the offense being investigated, and that the warrant should have been constrained to information relating to Dain Adams, the Court has already found that the phone's location at the residence and capability of connecting to the IP address are sufficient facts to link the phone to the alleged crime. Moreover, the search of the cellphone was sufficiently limited to evidence of the crime being investigated—the possession and sharing of child pornography. *See* (Doc. 26-1 at 7) (limiting the cellphone search warrant to: "all digital data from the phone that details communications," "[a]ny images, videos, or sound recordings documenting *the crime*, or the circumstances leading to *the crime*," "[a]ny information regarding the service provider for the cellular phone") (emphasis added). Therefore, the Court finds the warrant is not overly broad and overrules this objection. *See United States v. Brooks*, 427 F.3d 1246, 1252 (10th Cir. 2005) (if when reading a warrant as a whole, it "more naturally instructs officers to search those files only for evidence *related to child pornography*" it passes constitutional muster) (emphasis in original); *see also Burke*, 633 F.3d at 984 (because of the nature of the charge—the sexual exploitation of children—reference to the charge was "narrow enough to meet the fourth amendment's requirement by bringing to officers' attention to the purpose of the search"); *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000) ("Rather than authorizing an unfocused inspection of all of Mr. Campos's property, the warrant was directed at items relating to child pornography."); *and see*

*United States v. Russian*, 848 F.3d 1239, 1245, n.1 (10th Cir. 2017) (recognizing that the Tenth Circuit has never required "a search methodology" for computer warrants).

### III. Conclusion

For the reasons set forth above, Ms. Laurezo's *Objections to the Proposed Findings and Recommended Disposition Regarding Motion to Suppress Evidence*, (Doc. 71), are **OVERRULED**, the Chief Magistrate Judge's *Proposed Findings and Recommended Disposition*, (Doc. 68), is **ADOPTED**, and Ms. Laurezo's *Motion to Suppress Evidence*, (Doc. 26), is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE